**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ANNIE KIM LE,<br><br>              Debtor. | BAP No. NC-22-1033-BGF<br><br>Bk. No. 21-50179 |
| SPARTAN TANK LINES, INC.,<br>              Appellant,<br>v.<br>ANNIE KIM LE,<br>              Appellee. | Adv. No. 21-05022<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Stephen L. Johnson, Chief Bankruptcy Judge, Presiding

Before: BRAND, GAN, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Appellant Spartan Tank Lines, Inc. ("Spartan") appeals an order denying its attorney's fees for a dischargeability proceeding it successfully prosecuted against the debtor, Annie Kim Le, for fraud under § 523(a)(2)(A).[1] Le's entity, American Gas & Oil Corp. ("American"), was a customer of Spartan's. As part of their business relationship, Le executed a personal

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

1

guaranty of American's debts to Spartan. The personal guaranty contained an attorney's fee clause.[2]

The bankruptcy court determined that Spartan could not recover attorney's fees under Cal. Civ. Code ("CCC") § 1717 because the fraud dischargeability proceeding was not an "action on a contract." We agree. We also conclude that Spartan could not recover attorney's fees for its fraud claim under Cal. Code Civ. P. ("CCP") § 1021, which Spartan raised as a basis for fees but the bankruptcy court did not consider. Accordingly, we AFFIRM.

**FACTS**

The facts are undisputed because Spartan's requests for admission were deemed admitted after Le failed to respond to them. Spartan sold and delivered gasoline to a gas station owned by American. Le was the CEO of American and operated the gas station.

On December 30, 2009, Le, as CEO of American, submitted a credit application with Spartan for the purpose of gasoline sale and delivery. Spartan approved the application and extended credit privileges to American, conditioned upon the receipt of a personal guaranty from Le. In the credit application, Le promised to pay American's debts to Spartan (the "Credit Application Guarantee"). The Credit Application Guarantee contained an attorney's fee clause which states:

> The undersigned further agrees to pay any and all reasonable attorney fees and collection costs whether or not action is

---

[2] As explained more below, Le signed two personal guaranties on the same date which both contain an attorney's fee clause but with different language.

instituted for collection thereof, and if action is instituted [sic] collection, such reasonable attorney fees as the court may award.

Le also signed a separate document attached to the credit application called "Personal Guaranty" which contained the same promise to pay American's debts to Spartan. The Personal Guaranty contained a different attorney's fee clause which states:

> Guarantors agree to pay reasonable attorney's fees and all other costs and expenses which may be incurred by Seller in the enforcement of this guaranty and the enforcement of any judgement [sic] thereafter entered against Guarantors.

American stopped paying Spartan for delivered gasoline sometime in 2019. As of December 31, 2019, American owed Spartan $31,945.19. Neither American nor Le paid the debt owed to Spartan.

Spartan sued American and Le in state court for breach of contract and personal guaranty, seeking to recover the $31,945.19, plus interest and reasonable attorney's fees. The case went no further than the complaint stage due to Le's chapter 13 bankruptcy filing. A few days after her chapter 13 case was involuntarily dismissed, Le filed the instant chapter 7 case.

Spartan filed an adversary complaint against Le under § 523(a)(2)(A), alleging that its debt was nondischargeable based on her personal guaranty[3] and subsequent fraudulent transfers of assets intended to deprive Spartan of payment for gasoline sold and delivered to American.

---

[3] When we use the term "personal guaranty" (in lower case), we mean both guaranties to the extent Le agreed to pay American's debts to Spartan.

Le moved to dismiss the complaint, arguing that Spartan's claim under § 523(a)(2)(A) failed because she could not have "obtained" the debt corresponding to her personal guaranty by way of the fraudulent transfer scheme. The court rejected this argument, observing that the personal guaranty debt was not the relevant debt; rather, it was the debt Le incurred by engaging in the fraudulent transfers under CCP § 3439 et seq. Under California law, a creditor can obtain a fraudulent transfer judgment against not only the transferee but also the person for whose benefit the transfer was made. *See* CCC § 3439.08(b)(1)(A). Though Le was not the transferee, she benefitted from the transfers she orchestrated. The court reasoned that this could support a § 523(a)(2)(A) claim absent a misrepresentation under *Husky International Electronics, Inc. v. Ritz*, 578 U.S. 356 (2016).

After Le failed to respond to Spartan's requests for admission, Spartan moved for summary judgment, which the bankruptcy court granted. The deemed admitted facts established that Le had engaged in actual fraud as to Spartan. The details of the fraudulent transfers are not important here. Suffice it to say, Le admitted that her transfers of American's assets and a home titled in the name of an LLC she controlled were done for the sole purpose of avoiding payment to Spartan and other creditors of American. In the summary judgment order, the bankruptcy court concluded that Spartan's claim for $47,278.88 (including interest) was excepted from Le's discharge under § 523(a)(2)(A), and that Spartan was entitled to reasonable attorney's fees and costs upon proof.

In its first motion for attorney's fees and costs, Spartan argued that it was entitled to fees per the fee provision in the Credit Application Guarantee.[4] Other than cursory citations to CCP § 1021 and CCC § 1717, Spartan did not argue what authority provided the basis for its fee award. Spartan requested $160,725.50 for fees and $10,090.99 for costs incurred in both the state court contract action and the dischargeability proceeding.

After reviewing Spartan's first fee motion and discerning a notice defect, the bankruptcy court directed Spartan to refile and renotice the motion. Further, and changing course on the fee issue, the court observed that fees might not be recoverable. While it did not articulate its reasoning, the court appeared to question whether the dischargeability proceeding was an "action on a contract" within the meaning of CCC § 1717. The court directed Spartan to address the following cases in its second fee motion: *Bos v. Board of Trustees*, 818 F.3d 486 (9th Cir. 2016); *American Express Travel Related Services Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122 (9th Cir. 1996); *Grove v. Fulwiler (In re Fulwiler)*, 624 F.2d 908 (9th Cir. 1980); and *Hsu v. Abbara*, 9 Cal. 4th 863 (Cal. 1995).

Spartan's second motion for attorney's fees and costs addressed and attempted to distinguish the above cases as inapposite. Spartan argued that

---

[4] In its § 523 complaint, Spartan referenced only the Personal Guaranty. In her motion to dismiss the complaint, Le referenced only the Credit Application Guarantee but attached copies of both guaranties to her motion. In its opposition to Le's motion to dismiss, Spartan discussed only the Personal Guaranty but also attached copies of both guaranties. For purposes of attorney's fees, Spartan relied on the attorney's fee clause in the Credit Application Guarantee. The bankruptcy court did not state which attorney's fee

the dischargeability complaint was based on its breach of contract/personal guaranty claim against Le and that the bankruptcy court necessarily decided that claim in granting summary judgment. Thus, argued Spartan, the dischargeability proceeding was an "action on a contract" because the Credit Application Guarantee was the basis for its fraudulent transfer claim against Le, which in turn supported a claim for actual fraud within the meaning of § 523(a)(2)(A) and *Husky*. Spartan again cited CCP § 1021 but did not argue that attorney's fees were recoverable for a tort action under the Credit Application Guarantee. Spartan was now requesting $178,362.25 in attorney's fees (up $18,000 from the first fee motion) and $10,746.55 in costs.

After a hearing, the bankruptcy court denied Spartan's request for attorney's fees and awarded only $5,825.60 for costs, after deducting certain unauthorized expenses.[5] While the personal guaranty was the underpinning of Spartan's fee request, the court reasoned that the dischargeability proceeding was not an "action on a contract" because neither breach nor enforceability of the personal guaranty had to be determined to establish that Spartan's fraud claim (based on California fraudulent transfer law) was nondischargeable under § 523(a)(2)(A). Le admitted that she signed an enforceable personal guaranty of American's debts, that it was in effect when American defaulted on its obligation to Spartan, and that she was personally liable for the default. Accordingly, the court found that under *Bos* and similar

___

clause it considered for its ruling.

[5] Spartan does not challenge the bankruptcy court's decision to award a reduced amount for its costs.

6

case law, CCC § 1717 did not apply, and therefore Spartan could not recover its attorney's fees. Spartan timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion in denying Spartan its attorney's fees on its § 523(a)(2)(A) claim?

## STANDARDS OF REVIEW

Generally, the denial of an award of attorney's fees is reviewed for abuse of discretion. *FDIC v. Lugli*, 813 F.2d 1030, 1034 (9th Cir. 1987). A bankruptcy court abuses its discretion if it applies the wrong legal standard, or misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in the record. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

However, if the propriety of a fee award depends on contractual interpretation or other questions of law, we review the fee ruling de novo. *Lugli*, 813 F.2d at 1034. "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

We may affirm on any ground supported by the record, whether or not the bankruptcy court relied upon, rejected, or even considered that ground. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir.

2014).

**DISCUSSION**

**A. The bankruptcy court did not err in ruling that the dischargeability proceeding was not an "action on a contract."**

There is no general right to attorney's fees in adversary proceedings and contested matters in bankruptcy. *See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 447-48 (2007); *Heritage Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir. 1997). Bankruptcy courts, however, may award fees in § 523 actions where authorized by state law. *See Travelers*, 549 U.S. at 451-52; *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998); *AT&T Universal Card Servs., Corp. v. Pham (In re Pham)*, 250 B.R. 93, 99 (9th Cir. BAP 2000) (post-*Cohen*, the determinative question in a § 523(a)(2)(A) action is whether the successful plaintiff could recover attorney's fees in a nonbankruptcy court).

The applicable provisions of California law governing the award of attorney's fees are CCC § 1717 and CCP § 1021. CCC § 1717(a)[6] allows a party to recover attorney's fees incurred in the litigation of a contract claim. *Bos*, 818 F.3d at 489; *Redwood Theaters, Inc. v. Davison (In re Davison)*, 289 B.R. 716, 722

---

[6] CCC § 1717(a) provides:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

8

(9th Cir. BAP 2003); *Santisas v. Goodin,* 17 Cal. 4th 599, 615 (1998). Three conditions must be met for CCC § 1717 to apply. First, the action generating the fees must have been an "action on a contract." Second, the contract must provide that attorney's fees incurred to enforce it shall be awarded either to one of the parties or to the prevailing party. Finally, the party seeking fees must have prevailed in the underlying action. *Bos,* 818 F.3d at 489 (citing *Penrod v. AmeriCredit Fin. Servs., Inc., (In re Penrod),* 802 F.3d 1084, 1087-88 (9th Cir. 2015)).

The only condition at issue here is whether the dischargeability proceeding was an "action on a contract." A dischargeability proceeding is an action on a contract under CCC § 1717 if the bankruptcy court needed to determine the enforceability of the contract to determine dischargeability. *Id.* (citing *In re Baroff,* 105 F.3d at 442). Put another way, "if the bankruptcy court did not need to determine whether the contract was enforceable, then the dischargeability claim is not an action on the contract within the meaning of CCC § 1717." *Id.* (cleaned up); *In re Hashemi,* 104 F.3d at 1126; *In re Davison,* 289 B.R. at 723.

Relying primarily on *Bos,* the bankruptcy court concluded that the dischargeability proceeding was not an action on a contract because the court did not have to determine the breach or enforceability of Le's personal guaranty to rule that Spartan's fraud claim against her was excepted from discharge under § 523(a)(2)(A). Spartan argues that this was error; the bankruptcy court did have to adjudicate the existence, enforceability, and

9

breach of Le's personal guaranty. Spartan argues that prevailing on the allegations of breach of the personal guaranty against Le was a precondition to its allegations of her fraudulent transfers constituting "actual fraud" within the meaning of § 523(a)(2)(A). In other words, but for the personal guaranty and Le's subsequent breach, there would be no debt, and thus there could have been no nondischargeable debt for fraud under § 523(a)(2)(A). We disagree.

Whether the bankruptcy court considered the Credit Application Guarantee or the Personal Guaranty attached to the credit application, the dischargeability proceeding was not an action on a contract. The court did not "enforce" the contract as that phrase is used in CCC § 1717. It did not have to interpret or determine the validity of Le's personal guaranty; there was no dispute regarding Le's liability under the guaranty or the amount owed to Spartan; and Le's breach of the personal guaranty did not determine the outcome of the summary judgment, which was that the debt was excepted from Le's discharge for fraud under § 523(a)(2)(A). The personal guaranty provided the context out of which this dispute arose, but it did not play an integral role in the dischargeability proceeding. *Compare Barrientos v. 1801-1825 Morton LLC,* 583 F.3d 1197, 1216 (9th Cir. 2009) (CCC § 1717 applied because the contract played an integral role in defining the rights of the parties), *In re Baroff,* 105 F.3d at 442-43 (CCC § 1717 applied in § 523 action where outcome turned on the interpretation of an agreement), *and Arciniega v. Clark (In re Arciniega),* BAP No. CC-15-1123-KiGD, 2016 WL 455428, at *14 (9th

Cir. BAP Feb. 3, 2016) (CCC § 1717 applied to one claim in § 523 action where California law governed the interpretation of a key phrase in the agreement and proof of both breach and dischargeability was required), *with In re Fulwiler*, 624 F.2d at 909-10 (CCC § 1717 did not apply because the contract was collateral to the dischargeability proceeding).

While the preexisting personal guaranty determined the amount of the debt Le owed to Spartan, the bankruptcy court found that Le "obtained" the nondischargeable fraud debt to Spartan by her later transfers of assets in a manner which constituted actual fraud under § 523(a)(2)(A). Le's liability to Spartan was not based on her breach of the personal guaranty; rather, it was based on the fact that she benefitted from the fraudulent transfers she orchestrated to avoid payment to Spartan. *See e.g., SE Prop. Holdings, LLC v. Gaddy (In re Gaddy)*, 977 F.3d 1051, 1057-58 (11th Cir. 2020) (reasoning that *Husky* does not suggest a debtor's fraudulent transfers render a preexisting breach of contract debt exempt from discharge under § 523(a)(2)(A) and holding that the contract debt which preexisted the fraudulent transfers did not arise from fraud); *Kwong v. Aykiran (In re Aykiran)*, BAP No. NC-21-1134-TFG, 2022 WL 214816, at *4 (9th Cir. BAP Jan. 25, 2022) (noting that in *Husky*, the "fraudulent acts potentially *created* the debt at issue" and rejecting the argument that debtor's fraudulent transfer of property "somehow *transformed* [debtor's] preexisting Loan debt into a nondischargeable debt.") (emphases in original).

Accordingly, because the dischargeability proceeding was not an action

11

on a contract, the bankruptcy court did not err in determining that CCC § 1717 did not apply and that Spartan could not recover attorney's fees under that statute.

**B.      The bankruptcy court erred by not considering Spartan's fee request under CCP § 1021, but such error was harmless because attorney's fees were not recoverable under that provision either.**

CCC § 1717 is not the only statutory basis for recovery of attorney's fees in California. *Asphalt Pros., Inc. v. Davis (In re Davis)*, BAP No. CC-18-1326-FLKu, 2019 WL 2931668, at *7 (9th Cir. BAP July 3, 2019), *aff'd,* 809 F. App'x 415 (9th Cir. 2020). Spartan also cited CCP § 1021 as a basis for recovering fees, but the bankruptcy court did not consider Spartan's request under that provision and instead analyzed it only under CCC § 1717.

CCP § 1021 permits recovery of attorney's fees by agreement between the parties and is not limited to actions on a contract. Specifically, it provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided." CCP § 1021 must be read in conjunction with CCP §§ 1032 and 1033.5, which together provide that a prevailing party is entitled to recover costs in any action or proceeding, and attorney's fees authorized by contract are allowable as "costs." CCP §§ 1032(b), 1033.5(a)(10)(A).

CCP § 1021 allows the parties to agree that the prevailing party may recover attorney's fees whether the litigation sounds in contract or in tort.

*3250 Wilshire Boulevard Bldg. v. W.R. Grace & Co.,* 990 F.2d 487, 489 (9th Cir. 1993) (where attorney's fees are not recoverable for a noncontract action under CCC § 1717, they may be recoverable under CCP § 1021); *Hamilton v. Charalambous (In re Charalambous),* BAP No. CC-13-1042-PaDKi, 2013 WL 3369299, at *6 (9th Cir. BAP July 3, 2013) (CCP §§ 1021, 1032 and 1033 "make clear" that attorney's fees may be recoverable by a prevailing party in disputes sounding in tort or contract); *In re Davison,* 289 B.R. at 724; *Santisas,* 17 Cal. 4th at 608; *Xuereb v. Marcus & Millichap, Inc.,* 3 Cal. App. 4th 1338, 1341 (1992). Here, the bankruptcy court's ruling in favor of Spartan for its fraud claim against Le under § 523(a)(2)(A) effectively resolved a tort dispute. The court erred by considering Spartan's fee request only under CCC § 1717. It should have also considered it under CCP § 1021. However, the court's failure to do so under the circumstances was harmless error. Neither the Personal Guaranty nor the Credit Application Guaranty is broad enough to cover tort claims.

To determine whether a prevailing party may recover attorney's fees under CCP § 1021 for tort claims like fraud, courts look to the language of the agreement between the parties to determine the extent of attorney's fees covered. *3250 Wilshire Boulevard Bldg.,* 990 F.2d at 489; *In re Arciniega,* 2016 WL 455428, at *12 (attorney's fees for fraud claims may be recoverable under CCP § 1021 if the contract so provides); *In re Davison,* 289 B.R. at 724 ("If there is an attorney's fees provision in an agreement between the parties, we look to the language of the agreement to determine whether an award of attorney's fees

is warranted in a tort action."); *Santisas,* 17 Cal. 4th at 608; *Brown Bark III, L.P. v. Haver,* 219 Cal. App. 4th 809, 827-28 (2013) (fee clause must be broad enough to cover tort claims and must identify the party seeking fees as the beneficiary of it); *Xuereb,* 3 Cal. App. 4th at 1342.

As noted above, the Credit Application Guarantee and the Personal Guaranty attached to the credit application contain different attorney's fee clauses. The clause in the Personal Guaranty provides:

> Guarantors agree to pay reasonable attorney's fees and all other costs and expenses which may be incurred by Seller in the enforcement of this guaranty and the enforcement of any judgement [sic] thereafter entered against Guarantors.

By its terms, this fee provision is limited to the enforcement of the guaranty and the enforcement of any judgment therefrom.

Courts have held that clauses which authorize attorney's fees to "enforce" or "interpret" a contract do not include tort claims for fraud. *See Sharma v. Salcido (In re Sharma)*, BAP Nos. CC-12-1302-MkTaMo & CC-12-1520-MkTaMo, 2013 WL 1987351, at *18 (9th Cir. BAP 2013), *aff'd,* 607 F. App'x 713 (9th Cir. 2015) (suit to "enforce or interpret" a settlement agreement was not broad enough to cover fees in a § 523(a)(2)(A) case involving fraud in the inducement of a settlement agreement); *Exxess Electronixx v. Heger Realty Corp.,* 64 Cal. App. 4th 698, 708-09 (1998) (action or proceeding to "enforce the terms or declare rights" under a lease did not cover fraud claims); *Xuereb,* 3 Cal. App. 4th at 1342-43 (party cannot recover fees on tort claims under a contractual provision authorizing fees incurred in an action to "interpret" or

"enforce" the contract). The attorney's fee clause in the Personal Guaranty did not provide a basis for Spartan to recover fees against Le for its fraud claim under § 523(a)(2)(A) because it is limited to the enforcement of the guaranty and any related judgment.

On the other hand, clauses with broader language can extend to fees incurred in litigating tort claims. *3250 Wilshire Boulevard Bldg.*, 990 F.2d at 489 (attorney's fee clause applied in tort action because it allowed fees to prevailing party for "any suit" or other proceeding with respect to the "subject matter or enforcement" of the agreement); *Santisas*, 17 Cal. 4th at 608 (agreement for fees for any "litigation arising out of the execution" of agreement or sale of property covered tort claims); *Gonzales v. Personal Storage, Inc.*, 56 Cal. App. 4th 464, 480 (1997) (clause calling for attorney's fees in "any legal action" applied to tort action); *Xuereb*, 3 Cal. App. 4th at 1341 (agreement providing for prevailing party fees in "any lawsuit or other legal proceeding to which it gives rise" was broad enough to cover tort claims).

While the attorney's fee clause in the Credit Application Guarantee is not as limiting as the one in the Personal Guaranty, it is also not as broad as those noted above. It states:

> The undersigned further agrees to pay any and all reasonable attorney fees and collection costs whether or not action is instituted for collection thereof, and if action is instituted [sic] collection, such reasonable attorney fees as the court may award.

The Credit Application Guaranty is somewhat unintelligible with its poor grammar and typographical errors. Nonetheless, we interpret it to mean that

if a collection action was instituted, Spartan could recover reasonable attorney's fees as awarded by the court. This is very similar to the Personal Guaranty and is not broad enough to cover attorney's fees for a tort action. Therefore, like the Personal Guaranty, the attorney's fee clause in the Credit Application Guaranty did not provide a basis for Spartan to recover fees against Le for its fraud claim under § 523(a)(2)(A).

## CONCLUSION

Because Spartan's attorney's fees for its fraud claim under § 523(a)(2)(A) were not recoverable under either CCC § 1717 or CCP § 1021, the bankruptcy court did not abuse its discretion in denying fees. We AFFIRM.